By the Court.
Campbell, J.
The parties were copartners engaged in the manufacture and sale of tobacco. Their place of business for the sale of their tobacco was at No. 4 Wall-street, in the city of New York. These premises were occupied by the parties under a lease from a committee of the estate of a lunatic, which lease was to continue for five years, if not sooner terminated by the death of the lunatic. This lease was in the name of the complainant as lessee, though the advantages arising from it were enjoyed by the firm of *558 John Anderson & Co., composed of the parties to this suit. The lunatic had died before the expiration of the five years, but the heirs had extended the lease. Improvements had been made by the copartners upon the premises, but which would belong to the owners of the fee at the expiration of the lease.
In the summer of 1847, the copartnership term being about expiring, the parties entered into a negotiation for a renewal, and at the same time the heirs, owners of the fee of the premises above mentioned, offered the same for sale. The extended lease of the premises would expire in the following spring. Thereupon the complainant, with the' knowledge, and, as is charged, with the approbation of the defendant, opened an egotiation with the agent of the heirs for the purchase of the fee of the premises, and from time to time reported 'to the defendant the progress of such negotiation. But whether the complainant intended to purchase the premises for the copartnership and to be held as copartnership property, or whether he intended to purchase in his own name, and to be held as his individual property, simply giving to the copartnership the'benefit of the purchase during the existence of the new term, if one should be agreed upon, is a question in dispute between the parties. According to the agreement for the copartnership during the term which was about expiring, the parties were not equal copartners, the complainant receiving three-fourths and the defendant one-fourth of the profits. In the negotiation for the new term", the complainant insisted upon the same division of profits, and the defendant, on the other hand, insisted that in the new term he should become an equal copartner.
• Under this state of things the defendant obtained from the agent of the owners of the premises a promise not to sell to the complainant without notice to the defendant, and the defendant agreed to become a secret bidder against the complainant. Both of the negotiations, for the purchase of the premises and for the new copartnership, were continued for some time. The original term of copartnership had in the mean time expired, and the copartnership continued from day to day at the will of *559 .the parties. The defendant failing, as he owns, to make an arrangement satisfactory to him for a new copartnership, without the knowledge of the complainant, succeeded in effecting a purchase of the premises in question, and obtained a conveyance to himself individually. No new copartnership between the parties was ever formed. ■ The complainant now seeks to have the property in question decreed to be copartnership property, and asks that the same may be sold for the benefit of the original copartnership; and failing that, then that the defendant pay for the improvements erected upon the premises by the copartnership during the continuance of the lease.
It seems to me that two important questions present themselves in this case for our consideration.
1st. Whether the fee of real estate, where a portion of the business of a copartnership is carried on, purchased by one partner and paid for out of his individual property without the knowledge or consent of his copartner, can, at the election of his copartner, be decreed to be partnership property, it being no part of the ordinary business of such copartnership to engage in the purchase of real estate. 2d. Whether under the particular circumstances of this case, looking at the relation which these parties sustained to each other at the time of the commencement of the negotiation for the purchase by the complainant, and at the ■time of the actual purchase by the defendant, we may consider that the defendant acted fraudulently in making the purchase, and on the ground of fraud may decree the purchase made for the benefit of the copartnership.
In reference to the first question. In Norris v. Le Neve, (3 Atkyns, 26,) an effort was made to set aside the purchase of a reversion which had been made by a barrister while he was acting as executor and trustee under the will of the original owner. Lord Hardwicke says, “ The case which has been cited of Bumford Market and other cases of leases, (Pierson v. Shore, 1 Atkyns, 480,) are different from this, for there tenant right of renewals are rather a courtesy from the landlord, and cceteris paribus, the relations of the same family who took the original lease from bishops, deans, chapters, &c., are generally preferred, *560 and they have a natural expectation of it.” And he adds in another part of his opinion, “ This is primes impressionia, and no case has been cited in point, but only argued by way of analogy, to cases of leases which I have shown are very different.” And though he declined in that case to interfere, mainly on the ground of great lapse of time, yet the distinction there taken remains, and in many cases where a party from his previous confidential relations might be decreed to-stand as trustee in a renewal lease taken in his own name, he would not be so decreed where he had become the purchaser of the reversion.
Sir William Grant, in Randall v. Russell, 3 Merivale, 190, says truly: “ There never was a stronger case for turning the purchaser of a reversion into a trustee for those who had the antecedent interests in the estate, than that of Norris v. Le Neve. ” And yet he approved and enforced the .doctrine. There the defendant, who was tenant for life, under her husband’s will, of certain leasehold estates, purchased in her own name the reversion in fee, and the bill was filed, among other things, to have her declared a trustee of this estate for the benefit of the heirs of her husband. The Master of the Rolls remarks: “ It is not enough to say that Mrs. Russell’s situation as tenant for life gave her the opportunity of making the purchase. They must go on and show what right ’ or interest of theirs she acquired or defeated by making the purchase.”
So in the case before us, laying out of view all allegations of fraud and circumstances and facts to support them. Whose right or interest did the defendant acquire b.y this purchase ? Not that of the complainant,'for he had none, except a common right with every other man in the community to become the purchaser. The premises were not offered for lease, but for sale to the highest bidder, and there is no evidence going to show any favor to either complainant or defendant; on the contrary, the agent avowed his intention in availing himself of the relative position of these parties to procure as large a price as possible. The death of the original owner, and the descent of the estate, like the change of ownership of the fee in Randall *561 v. Russell, had altered the relation of these parties to the premises in question.
We entertain no doubt as to the right of a partner to make such a purchase, under circumstances free ’ from deception or fraud; and if in this case 'the defendant had made this purchase in his individual name, and with his own money, and without the knowledge of the complainant, and free from any imputation of deception or fraud, that he would be entitled to retain the premises as his individual property, and ought not, at the election of his copartner, to be decreed to stand as trustee for the benefit of the firm. We are not prepared to say, that, under some circumstances, a partner might not be decreed to stand as such trustee of real estate for the firm. Whether, in case of a continuing partnership, he might not be decreed to hold the premises for the benefit of the firm until the expiration of the term of copartnership, is a question perhaps not necessary to discuss in this case, as there was no renewal of the copartnership between the parties.
The general rule is no doubt as laid down in § 1207, 2d Story’s Eq. Jur., and to which we were referred by the complainant,, viz., “ In cases, therefore, where real estate is purchased for partnership purposes and on partnership account, it is wholly immaterial, in the view of a court of equity, in whose name or names the purchase is made and the conveyance is taken, whether in the name of one partner or of all the partners.” But it must appear that the real estate is purchased for “partnership purposes, and on partnership account, and then it is immaterial in whose name it stands, because, quoad hoc the partnership property, each partner is a trustee for the other. It is very evident that the real estate in question was not purchased ostensibly by the defendant for partnership purposes and on partnership account.
If the relations in which these parties stood to each other were such as to constitute the defendant an agent for the complainant, or in this transaction an agent for the firm, then it ■ may well be that the defendant cannot appropriate the property to his individual use. But the mere fact of being a partner, *562 could hardly constitute the defendant such agent. The partnership was organized for the purpose of dealing in tobacco, and not in real estate. The fact that one man is the copartner of another in a specific business, can hardly constitute him the agent of the copartner in all his other business and pursuits. But it is said that the defendant effected the purchase through artifice and fraud; that standing in the relation of partner and confidential adviser, he took a fraudulent advantage, and should therefore be considered a trustee.
In the cases of Lees v. Nuttall, 1 Russ. & Myl. 53, Taylor v. Solomon, 4 Mylne & Craig, 139, and Brown v. Lynch, 1 Paige, 147, the defendants were acting as agents for others, such agency appearing on the face of the papers, or being avowed at the time of the purchase, except in case of Lees v. Nuttall, where the defendant was an attorney, and was instructed by the complainant .to draw the articles of agreement for the purchase of an estate which the complainant had negotiated, and the defendant afterwards procured a deed to himself, having negotiated subsequently with the seller on his own account. In 'Brown v. Lynch, the defendant represented that he was purchasing for the complainants, and prevented competition on their part and others, and throughout the negotiations and transactions avowed himself as their agent. Subsequently, by disavowing the agency which he had previously and repeatedly avowed, he sought to practise a gross fraud, and he was properly decreed to stand as trustee for their, benefit. In Fawcett v. Whitehouse, and Hitchens v. Congreve, 1 Russ. & Mylne, 132 and 150, the defendants, while professedly negotiating for their partners and joint owners, secured large bonuses for themselves, without the knowledge and consent of their copartners, and they were justly decreed to account for the moneys thus received. The other cases are of similar character, either of express or implied agency.
Now, did the parties to this suit stand in that relation of confidence which necessarily constituted such an agency; because it is not pretended that it appeared upon the articles of agreement for the purchase, nor upon the deed, that there was *563 any sucb agency, nor tbat tbe defendant at any time avowed or disclosed tbat he was purchasing for tbe copartnership, but on tbe contrary, he explicitly stated tbat be was purchasing for himself, and negotiated with the agent of tbe owners upon that distinct basis. The term for which the copartnership had been formed between the plaintiff and defendant expired some weeks before the purchase was made, but the copartnership was continued on from day to day for the purpose of seeing whether the parties could agree upon their respective interests for another term. Tbe owner of the premises in question, who had been for many years insane, bad died. Tbe lease under which the parties, occupied, and which bad been extended by tbe heirs, was drawing to a close, and a partition suit had been instituted between the heirs for the purpose of settling the estate, and making a sale of the premises in fee. It can hardly, we think, be contended that, if instead of continuing on the partnership from day to day, it had been allowed to.expire on the day fixed for its limitation, and the defendant had made the purchase as he did, tbat be would not be entitled to bold tbe premises as bis individual property.
But though tbe partnership was continued in this mode, it is very evident tbat tbe parties were treating with each other at arms-lengtb for a future term, tbe defendant insisting that in sucb future term be should be an equal partner, and the plaintiff requiring him to remain and receive only his original fourth of tbe profits. Tbe confidence and joint interest of a partnership could hardly be said to exist.
Again, we think it very manifest, from the whole of the pleadings and proofs in this case, tbat tbe plaintiff intended to .purchase the property on bis own account and in bis own name, giving simply to tbe partnership the benefit of tbe purchase during tbe continuance of a new term, if one should be agreed upon satisfactory to him. And the plaintiff could not have been compelled to stand as trustee for the firm, if he had .purchased, as he proposed, and had made the admissions in an answer, as broadly as tbe allegations are made in bis complaint. As we re.ad bis complaint, it contains no positive averment that *564 he intended to purchase the premises, and hold them as partnership property. His statement to the witness, Pitcher, and which we have no doubt was correct, was, that he intended to purchase the premises for his own use, letting the firm have it at the rate of seven per cent, on the cost. The great contest between the parties was, as to the terms upon which the partnership should be renewed, and the possession and ownership of the premises were undoubtedly considered as important in the adjustment of the conditions of such renewal.
There are imperfect obligations which no court can enforce. The conduct of the defendant may not have been as open and independent as could have been desired. But we are unable to see upon what principle he can be decreed to stand as trustee for the partnership.
He purchased the property in fee, and obtained all the rights of the heirs. The copartnership had no interest in the improvements which had been made upon the premises during the continuance of the lease, nor had the plaintiff.
The bill must be dismissed, but looking at the conduct of the defendant in the matter, which we cannot approve of, we think it must be dismissed without costs.
Duer, J.
It is proper to add to the opinion which our brother Campbell has delivered, that we are not to be understood as saying that cases may not arise in which a purchase by one partner of the fee of the property in which the business of the partnership is conducted may not be justly held to create a trust for the benefit of the firm. Had it distinctly appeared in this case, that the plaintiff intended that the property, if purchased by him, should, in the full sense of the term, be partnership property, and that his intentions had been explicitly declared to the defendant, and were assented to by him, we must not be understood as saying that the secret purchase made by the defendant, might not, in equity, be justly treated as a fraud entitling the plaintiff to the relief which he seeks. Our judgment is founded upon the particular circumstances of this case, the actual dissolution of the copartnership, and the *565 uncertainty of its renewal, the serious doubts which hang over the intentions of the plaintiff, and the obscure and ambiguous manner in which they are stated in the bill, and the strong probability that in consequence of the price which was demanded, he had wholly abandoned his own intentions of becoming thé purchaser before the bargain was concluded. We cannot say upon the pleadings and proofs, that the plaintiff, had he made the purchase himself and taken the deed in his own name, intended, or would have been bound, to make any conveyance whatever to the defendant; if not, it was admitted by his counsel that he can have no right to demand a conveyance from the defendant.